**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Lorna Clause, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. CIV 15-388-TUC-CKJ |
| vs. | ) | |
| | ) | |
| Sedgwick Claims Management Services, | ) | **ORDER** |
| Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. 15) filed by Defendants Sedgwick Claims Management Services, Inc. ("Sedgwick") and Ascension Health Alliance ("Ascension") (collectively, "Defendants"). The Court declines to schedule this matter for argument. See LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:367 ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

*Factual and Procedural History*[1]

Plaintiff Lorna Sue Clause ("Clause") was employed as a Patient Care Technician for Carondelet. Because of two shoulder surgeries, calcifying tendonitis, supraspinatus tendon tear shoulder impingement and trapezius pain, Clause has been unable to work since August

---

[1]For purposes of this Motion to Dismiss, the facts are taken from the First Amended Complaint (Doc. 14).

1   2012 as a Patient Care Technician.

2        Clause applied for disability benefits through the Ascension Long-Term Disability

3   Plan ("Plan").  The Plan is administered through Ascension and Sedgwick provides benefits

4   and performs as the Claim Administrator of the Plan.  Clause's claim for long-term disability

5   benefits was accepted, reflecting an onset of disability by August 2012.

6        Following an initial termination of benefits and a successful appeal, Clause's benefits

7   were again terminated on November 18, 2014.  By letter of January 8, 2015, Defendants

8   again terminated Clause's benefits without mentioning its previous November 18, 2014,

9   termination letter – the rationale for the termination of benefits was modified.

10       Clause appealed the termination of her benefits.  Defendants confirmed the

11  termination of benefits, but again modified its rationale for the termination of benefits.

12       Clause initiated this action seeking declaratory relief, to recover benefits and enforce

13  her rights under the Plan, and to obtain equitable relief.[2]

14       Defendants filed their Motion to Dismiss, or in the Alternative, to Transfer Venue

15  (Docs. 15 and 16).[3]  A response and a reply have been filed.

16

17  *Forum Selection Clause*

18       Defendants claim that venue is improper in this Court because the forum selection

19  clause contained in the Plan identifies the United States District Court for the Eastern District

20  of Missouri as the exclusive venue for any claim "relating to or arising under" the Plan.

21  Motion, Ex. A, § 9.20 (Doc. 16-1).  Defendants assert that, absent exceptional circumstances,

22

23  _____

24       [2]Although the First Amended Complaint requests supplemental relief pursuant to
    "1131(a)(3)." there is no such provision.  Indeed, 29 U.S.C. § 1131 addresses criminal
25  remedies.  The Court accepts Clause's reference to "1131(a)(3)" as a reference to 29 U.S.C.
    § 1132(a)(3) which provides for injunctive and equitable relief.

26
         [3]This motion supersedes the prior Motion to Dismiss filed by Sedgwick.  The Court
27  will deny the superseded motion as moot.

28

1   the forum selection clause is mandatory and must be enforced.  Further, Defendants assert

2   Clause has not and cannot show exceptional circumstances.  Clause asserts, however, that

3   when Congress has granted a plaintiff the a right to choose venue in a statute, as in the venue

4   provision of the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29

5   U.S.C. § 1132(e)(2), a defendant may not restrict or alter that statute's special venue

6   provision through contract.[4]

7          "The presence of a valid forum-selection clause requires district courts to adjust their

8   usual § 1404(a) analysis in three ways." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for*

9   *W. Dist. of Texas*, — U.S. — , 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013).  "First, the

10  plaintiffs choice of forum merits no weight ..., as the party defying the forum-selection

11  clause, the plaintiff bears the burden of establishing that transfer to the forum for which the

12  parties bargained is unwarranted." *Id*. at 582.  Second, the district court should not "consider

13  arguments about the parties' private interests." *Id*. "When parties agree to a forum-selection

14  clause, they waive the right to challenge the preselected forum as inconvenient or less

15  convenient for themselves or their witnesses, or for their pursuit of the litigation. A court

16  accordingly must deem the private-interest factors to weigh entirely in favor of the

17  preselected forum." *Id*. A district court is to only consider arguments regarding

18  public-interest factors. *Id*.  "Third, when a party bound by a forum-selection clause flouts

19  its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will

20  not carry with it the original venue's choice-of-law rules – a factor that in some circumstances

21  may affect public-interest considerations." *Id*.

22         The enforceability of forum selection clauses is governed by federal law.

23

24  _____

25  [4]Clause points out that the Supreme Court has been asked to make a determination as
    to whether the policy considerations underlying ERISA's venue provision preclude

26  enforcement of forum selection clauses that plan administrators include in ERISA plans.
    Since the filing of the response, the Supreme Court has denied review.  *Smith v. Aegon*

27  *Companies Pension Plan*, 2016 WL 100358 (Mem) (Jan. 11, 2016).

28                                              - 3 -

1   *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir.1988). A forum

2   selection clause is presumptively valid and "should control absent a strong showing that it

3   should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Argueta*

4   *v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) ("Although *Bremen* is an

5   admiralty case, its standard has been widely applied to forum selection clauses in general.").

6   To avoid the application of a forum selection clause, the party opposing its enforcement must

7   show that it is unreasonable under the circumstances. *M/S Bremen*, 407 U.S. at 10; *see also*

8   *Manetti-Farrow*, 858 F.2d at 514-15.  The enforcement of a forum selection clause is

9   unreasonable where: (1) the inclusion of the clause in the agreement was the product of fraud

10  or overreaching; (2) the party objecting to the clause would effectively be deprived of his day

11  in court if the clause is enforced; and (3) the enforcement of the clause would "contravene

12  a strong public policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*,

13  362 F.3d 1133, 1140 (9th Cir. 2004) (citations omitted).  Forum selection clauses are also

14  evaluated for fundamental fairness.  To determine whether a forum selection clause is

15  fundamentally fair, and thus enforceable, courts consider the absence of a bad-faith motive,

16  the absence of fraud or overreaching, and notice of the forum provision. *Carnival Cruise*

17  *Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *Dempsey v. Norwegian Cruise Line*, 972 F.2d

18  998, 999 (9th Cir.1992)).

19      In this case, Clause asserts that Defendants concealed an oppressive change of venue

20  clause in the Plan documents to cause participants, including Clause, to lack a judicial

21  remedy without obtaining counsel and engaging in litigation away from their home state.

22  However, information regarding the forum selection clause was not only included in the Plan,

23  Motion, Ex. A, § 9.20 (Doc. 16-1), it was also included in the Summary Plan Description

24  ("SPD").  After discussing administrative remedies, including an appeal of a denial of

25  benefits, the SPD discusses other recourses available to someone seeking to challenge a

26  denial of benefits.  The SPD informs the reader he/she has right to bring a civil action under

27  Section 502(a) of ERISA, he/she may have other voluntary alternative dispute resolution

28

options, he/she may contact the U.S. Department of Labor office and your state insurance regulatory agency for information as to options available, and he/she could contact the Employee Benefits Security Administration (providing a contact number). The SPD then states:

> **The Plan contains a forum selection clause, which requires that any action relating to or arising under this Plan shall be brought in and resolved only in the U.S. District Court for the Eastern District of Missouri, and in any courts in which appeals from that court are heard.**

Motion, Ex. C, SPD, p. 22 (Doc. 16-3). Additionally, Defendants assert the SPD is posted on the Carondelet Health Network benefits website, and participants are notified that an SPD is available upon request at any time from the benefits department. The Court finds there is no evidence of a bad-faith motive by Defendants, fraud or overreaching. Moreover, as the clause is included in both the Plan and the SPD, the Court finds Plan and the SPD provided sufficient notice of the forum selection clause. *See e.g. Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 908 (9th Cir. 2009) (there is no duty on plan administrators to "inform participants separately of provisions already contained in the SPD").

Here, the forum selection clause removes any uncertainty about where jurisdiction lies, thus avoiding confusion regarding venue selection. Moreover, since it is arguably more cost efficient for Defendants to litigate in Missouri, those savings could be passed along to the Plan itself. *See Cent. States, Southeast and Southwest Areas Pension Fund v. O'Brien & Nye Cartage Co.*, No. 06-4988, 2007 WL 625430, at *3 (N.D. Ill. Feb. 22, 2007) (finding that "[t]he purpose of including the venue selection clauses is obviously to allow for the Trustees to better exercise efficient administration of the Funds by reducing cost associated with litigating claims against multiple employers . . . ."). Additionally, lead counsel for Defendants are located in Missouri. Clause argues, however, that the restrictive forum selection clause would require her to litigate in a venue that is more than 1000 miles from her home and most recent place of work and in a venue with which Clause has no connection. Further, Clause asserts that her disability has already worked a substantial financial hardship

1   upon her and litigating in Missouri, where she cannot afford to travel to hearings, would

2   present an oppressive burden.   Clause also asserts that she would be unable to have her

3   current counsel represent her and it would be burdensome to retain another attorney to

4   represent her in Missouri.[5]  In other words, Clause asserts that enforcement of the forum

5   selection clause would deprive her of her day in court. *Murphy v. Schneider Nat'l, Inc.*, 362

6   F.3d 1133, 1140 (9th Cir. 2004) (refusing to enforce forum selection clause where party's

7   substantial "physical and financial limitations" would preclude him from having "his day in

8   court").

9          Initially, the Court notes that it is more than likely that neither Clause nor her attorney

10  would be required to travel to Missouri; ERISA cases are normally decided by cross-motions

11  and without the need for trial or discovery.  *See, e.g., Russell v. Comcast Corp.*, 381

12  Fed.Appx. 657 (9th Cir. 2010).  Further, even if Clause could obtain discovery in this case,

13  any information that Clause could theoretically discover would likewise be located in

14  Missouri, making travel possible no matter where the case is litigated.  Additionally, if a trial

15  were to occur, Clause could then seek a transfer of venue back to this district, based on her

16  inability to appear in Missouri.  28 U.S.C. § 1404(a) (allowing the court to "transfer any civil

17  action to any other district or division where it might have been brought" "[f]or the

18  convenience of parties and witnesses" and "in the interest of justice").  *See e.g. Rodriguez v.*

19  *PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855, 862 (N.D.Cal. 2010).  Further,

20  these factors address Clause's personal interests, which the *Atl. Marine Const. Co., Inc.*,

21  Court stated should not be considered.  "Enforcement of the forum selection clause [] will

22  not deprive [Clause] of [her] day in court." *Rodriguez*, 716 F.Supp.2d at 862.

23         Additionally, the record fails to establish that the enforcement of the forum selection

24  clause would "contravene a strong public policy of the forum in which suit is brought."

25  _____

26  [5]Defendants point out that out-of-state counsel are regularly admitted *pro hac vice* to

27  litigate on behalf of their clients against the Plan without any need for local counsel and
    without the need for physical appearances.

28                                              - 6 -

1   *Bremen*, 407 U.S. at 15.  Rather, as another district court has stated:

2           Enforcement of the forum selection clause in this case, moreover, actually furthers
            one of the purposes of ERISA by 'bring[ing] a measure of uniformity in an area where
3           decisions under the same set of facts may differ' as a result of geographic location.
            . . . (quoting H.R. Rep. No. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639,
4           4650).  The forum selection clause contained in [the] LTD Plan allows one federal
            court to oversee the administration of the LTD Plan and gain special familiarity with
5           the LTD Plan Document, thereby furthering ERISA's goal of establishing a uniform
            administrative scheme.

6   *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430 (S.D.N.Y. 2007).  Although Clause argues that

7   public policy requires fiduciaries to "discharge [their] duties with respect to a plan solely in

8   the interest of the participants and beneficiaries" and "in accordance with the documents and

9   instruments governing the plan insofar as such documents and instruments are consistent

10  with the provisions of this subchapter and subchapter III of this chapter," 29 U.S.C. §

11  1104(a)(1)(D), and the enforcement of the forum selection clause would violate that fiduciary

12  duty.  The interests of all participants and beneficiaries are benefitted by bringing uniformity

13  to ERISA decisions.

14          Lastly, the Court does not find Clause's argument that *Boyd v. Grand Trunk W. R.*

15  *Co.*, 338 U.S. 263 (1949), and similar cases should govern the enforceability of forum

16  selection clauses in ERISA cases.  Rather, *Boyd* did not involve a forum selection clause in

17  an ERISA case.  The Court agrees with Defendants that, not only have the rules governing

18  the validity of forum selection clauses been relaxed, *see* 7 Williston on Contracts § 15:15

19  (4th ed.), but the venue statute in *Boyd* was mandatory, while the ERISA venue provision has

20  permissive language.  Further, the federal governing statute has been broadened since *Boyd*.

21  Additionally, the Ninth Circuit was discussing an arbitration clause in a contract case in

22  *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011), which is relied upon by

23  Clause.  The Ninth Circuit has recognized that "in the past, [it has] expressed skepticism

24  about the arbitrability of ERISA claims, *see Amaro v. Cont'l Can Co.*, 724 F.2d 747, 750 (9th

25  Cir.1984), but those doubts seem to have been put to rest by the Supreme Court's opinions

26  in [*Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)] and [*Rodriguez*

27

28                                          - 7 -

*de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989)]." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1100 (9th Cir. 2006). As an arbitration clause is similar to a specialized forum selection clause, *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 932 (6th Cir. 2014), it is difficult to conclude that *Smallwood* should govern in this case.

The Court finds Clause has failed to overcome the strong presumption in favor of enforcing forum selection clauses. Further, Clause has not set forth any basis for which this Court should schedule an evidentiary hearing, as requested by Clause, to determine whether the forum selection clause was included in the Plan for a motive contrary to public policy.

*Dismiss or Transfer*

Because Clause would likely incur additional costs should this Court dismiss this case rather than transfer venue, the Court will deny the Motion to Dismiss, but will grant the Motion to Transfer Venue.

Accordingly, IT IS ORDERED:

1.      The Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. 10) is DENIED AS MOOT.

2.      The Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. 15) is GRANTED IN PART AND DENIED IN PART.

3.      The Clerk of Court shall transfer this matter to the United States District Court for the Eastern District of Missouri.

DATED this 15th day of January, 2016.

Cindy K. Jorgenson
United States District Judge